WILLIAM M. LONG ET AL. *vs.* BERTHA WORDEN
ET AL.

*Foreclosure Sale—Sufficiency of Advertisement—Sale in Par-
cels—Inadequacy of Price—Dismissal of Proceeding.*

Where, in the case of a mortgage foreclosure sale of two
tracts on opposite sides of the road, particularly suited to home
and building sites, the advertisement described them as adjoin-
ing each other and as forming together a named number of
acres, without naming the separate acreage of either, or indi-
cating that the property would be sold in divisions smaller
than the entire acreage, and one tract was sold as an entirety,
and from the other three 50-foot lots were sold, in which latter
mode similar property nearby had been sold, *held* that, the prop-
erty not having been properly advertised or offered, and having
brought an inadequate price, the sale should be set aside.
                                        pp. 119-123

While mere inadequacy of price is not sufficient to justify
the court in setting aside a sale unless it be so gross as itself

to afford evidence of negligence or bad faith, yet it may be considered by the court in estimating the effect of any error, default, or dereliction of an assignee or trustee in selling property.　　　　　　　p. 122

After exceptions to a foreclosure sale, filed by the mortgagors, have been sustained, an assignee of the mortgage, who made the sale, cannot, by dismissing the foreclosure proceeding, affect the rights of the purchasers, seeking to appeal from the decree setting aside the sale.　　　　　　p. 123

*Decided April 9th, 1925.*

Appeal from the Circuit Court for Allegany County, in Equity (Doub, J.).

Proceedings to foreclose mortgage, instituted by Thomas L. Richards, assignee, against Bertha B. Worden and others, mortgagors. From a decree sustaining exceptions by said mortgagors to the sale made, William M. Long and others, purchasers, appeal. Affirmed.

The cause was submitted on briefs to Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*T. L. Richards* and *William M. Somerville,* for the appellants.

*A. Taylor Smith, William A. Gunter, Taylor Morrison,* and *Charles R. Morris,* for the appellees.

Offutt, J., delivered the opinion of the Court.

Bertha B. Worden and Mary Frances Stains, on June 19th, 1923, executed a mortgage to T. Davis Richards and S. Ella Richards, his wife, to secure a loan of $6500 for one year on eighteen and three-quarters acres of ground and the improvements thereon, situate on the National Pike in the village of La Vale about three miles west of Cumberland.

That mortgage being in default was assigned for foreclosure to Thomas L. Richards and he, on August 8th, 1924, sold the property at public auction to the appellants in this case and on August 12th, 1924, reported the sale to the Circuit Court for Allegany County.

On September 5th the appellees excepted to the sale, stating as the grounds of exception, (1) that no statement of the mortgage debt verified by affidavit was filed before the day of sale, (2) that the price obtained was grossly inadequate and that the sale was not fairly made, (3) that the property was not sold in the manner indicated in the advertisement, (4) that a portion of the property sold as a single tract should have been sold in lots, and (5) that the mortgagees through their agent agreed orally not to foreclose the mortgage when it became due according to its terms.

The lower court sustained the exceptions for the second, third, and fourth reasons assigned and set aside the sale, and from that decree the purchasers, the appellants here, appealed.

The mortgaged property lay in two tracts, one on the north and the other on the south side of the National Pike between Frostburg and Cumberland. The tract on the north side on which the dwelling was located contained 10.85 acres and had a frontage of 223 feet on the highway. The tract on the south side contained 7.9 acres and had a frontage of 238 feet. Both tracts had a depth of approximately 1500 feet.

The 7.9 acre tract was offered as a whole, and was sold to Jacob Gross and William M. Somerville for $5700, while three lots from the 10.85 acre tract, each 250 feet deep with a 50 foot frontage on the highway, were sold to William M. Long for an aggregate price of $2400.

The contentions of the appellees are that the property was sold for an inadequate price, not in accordance with the advertisement, and in an improper manner. Before examining the law applicable to these contentions we will briefly state the facts disclosed by the record.

It appears to be conceded that the property is best adapted
and most suitable for residential purposes and readily
divisible into lots. In the advertisement of sale published
by the assignee this statement appears:

"The property to be sold is known as the 'Clary or
Piatt Property' in La Vale. This property adjoins the
'Forest Glen' real estate development and the proper-
ties of Mr. Jacob Gerlach and of Mr. John B. T.
Jenkins, and is in the most beautiful section of Cum-
berland's choice suburban district.

"It consists of 18¾ acres of very valuable land
located on both sides of the National Highway, in La
Vale, about three miles from Cumberland. This prop-
erty has a frontage of 214 feet on the north side of the
National Highway and a frontage of 231 feet on the
south side of the National Highway. The property
is improved by a frame dwelling house and by a brick
dwelling house. The land is located in the center of
the high-class residential section of La Vale, is one
of the most beautiful and valuable properties within
the vicinity of Cumberland, and is ideally adapted for
fine home building sites."

And the testimony taken at the hearing fully supports
that statement.

Mrs. Worden, one of the mortgagors, testified that she
had been offered $10,000 for the 7.9 acre tract by Mr.
Somerville and, although he denied having offered that, he
admitted having told her it was worth $10,000, and she
further said that she had been offered $5,000 for a lot 50x
250 of the other tract. Roderick Clary, supervisor of assess-
ments of Allegany County, testified that the fair market
value of the three lots of 50x250 from the 10.85 acre tract
sold to Long was $10,000, and that the fair market value
of the 7.9 acre tract was $10,000.

William M. Somerville, who, with Jacob Gross, bought
the 7.9 acre tract, testified that he had agreed to sell it since
his purchase for $7,700 and that he considered that, at the
time he testified (September 29th), its fair value. Jacob

Gross, the other purchaser of the 7.9 acre tract, testified that it was worth $30 to $40 a front foot, allowing 250 feet depth to a front foot, and he also said that the lots on the other side of the road sold to Long were worth from twenty-five to thirty dollars a front foot, although he admitted that he had sold lots with the same advantages about one-half mile further from Cumberland for $40 a front foot.

It also appeared that when the 7.9 acre tract was offered there were but four bids. Somerville bid $5,000, Gross $5,500, a Mr. Gibbs $5,600, and then Somerville bid $5,700; Gross then asked him if he could not have half of it before it was knocked down to him, and Somerville agreed, and the property was sold to Somerville for $5,700.

On the three lots sold to Long there were but two bids, one by "Mr. Richards" and one by Long. While the testimony is confused, it indicates that only one of the fifty foot lots bought by Long was offered and a bid of $800 received on it, and that then the three lots were offered together, and that Long was allowed to take the three at the rate of $800 for each lot.

In the advertisement of sale the assignee announced that he would

> "on Friday, August 8th, 1924, at 10.30 A. M., on Baltimore Street in front of the Second National Bank, in Cumberland, Allegany County, State of Maryland, sell to the highest bidder all those two tracts of land lying in Allegany County, Maryland, adjoining each other, on the National Highway, about three miles west of the City of Cumberland, both of said two tracts forming together 18¾ acres more or less."

It is apparent from these facts, (1) that the property was not properly advertised, (2) that it was not properly sold, and (3) that it sold for a grossly inadequate price.

No one could possibly learn from the advertisement that any part of the property was to be sold in lots, and indeed the most natural inference to be drawn from the language of the advertisement was that both parcels were to be sold

together, because, while it referred to the fact that there were two tracts, it stated that they "adjoined each other," and gave the total acreage of both tracts, but did not give the separate acreage of either. So that persons desiring to buy a single lot would not have been induced to attend the sale, because there was nothing in the advertisement to indicate that the property would be sold in divisions smaller than the entire acreage; certainly there was nothing in it to indicate that any part of it was to be sold in fifty foot lots.

When it was sold, however, it was not sold by the entirety, nor by tracts nor by lots. The 7.9 acre tract was sold as one piece, and three fifty foot lots were sold from the 10.85 acre tract, so that while the advertisement failed to notify prospective buyers desiring to bid on single lots that single lots would be offered, the manner of sale prevented persons who may have desired to bid on the whole 18¾ acres from bidding. Certainly it would be difficult to contrive any method of selling property less likely to bring its fair market value than that followed in this case.

The evidence is clear that the greatest utility of the property was for home and building sites, and it also appears that nearby property similar in character had been divided and sold in fifty foot lots at from thirty-five to forty dollars a front foot. Under these conditions no prudent owner would have attempted to sell the property as a whole, as the advertisement indicated it was to be sold, or even in two tracts containing respectively 7.9 and 10.85 acres, without first at least inquiring whether it could not be sold to better advantage in lots conforming in their dimensions to other lots in the neighborhood. In dealing with a similar situation in *Thomas v. Fewster,* 95 Md. 448, this Court said:

"It is impossible to examine the proof in this record without being fully satisfied that the trustee, while he acted in good faith made a mistake in selling the property in its entirety, instead of first offering it in lots. The evidence shows that it was susceptible of division into lots, and one of the inducements offered to buy in its entirety was stated

in the advertisement of the property by the trustee to be
'that by reason of its superior location, having a large front-
age on the Bel Air Road, this property is very susceptible
of division into building lots.' * * * We have carefully
examined the testimony upon the part of the appellants,
and find it wholly insufficient to show that the trustee
adopted the best mode of offering the property for sale.
He failed to exercise the same degree of judgment and pru-
dence that a careful owner would have adopted in the sale
of his own property.

"The law upon this subject is settled beyond controversy.
In *Carroll v. Hutton,* 88 Md. 679, a case involving this
principle, the Court, in speaking of the standard of fidu-
ciary duty resting on a trustee, lays down this rule: A trus-
tee is bound for the protection of the interest of all the
parties concerned to bring the property into the market in
such manner as to obtain a fair market price; he must con-
sider the best mode of offering the property, not only as to
whether it was advisable to offer it in lots or parcels, but
also the proper location and outlines of each parcel. *Hopper
v. Hopper,* 79 Md. 402; *Hubbard v. Jarrell,* 23 Md. 66;
*Mahoney v. Mackubin,* 52 Md. 366; *Reeside v. Peter,* 33
Md. 126; *Glenn v. Clapp,* 11 G. & J. 1; *Loeber v. Ecker,*
55 Md. 2; *Johnson v. Dorsey,* 7 G. 294; *Hintze v. Stingel,*
1 Md. Ch. 283."

Measured by that standard, the assignee in this case failed
to exercise that degree of care and judgment which the law
required of him. As was said in *Wicks v. Westcott,* 59 Md.
277: "Ordinarily, the presumptions are that the trustee
did his whole duty, and that a sale made at public auction,
after due notice, has brought the best price; but when facts
are found to exist, calculated to prejudice the sale, the pre-
sumption is against the sale. In such cases a court of equity
will sometimes ratify a sale when strict conformity to re-
quirements has not been observed in making it, but such
ratification will not be accorded unless it appears from the
proof, that the sale is an advantageous one and ought to be

ratified notwithstanding the infirmity in the methods of proceeding. In such case the court will infer depreciated price from much lighter evidence than would otherwise be required."

The appellants contend that such cases as *Ball v. Disney,* 143 Md. 89; *Hunter v. Highland Land Company,* 123 Md. 644; *Edgecombe Park Co. v. Finney,* 121 Md. 320; *Stirling v. McLane,* 103 Md. 47, and *Hughes v. Riggs,* 84 Md. 502, support the proposition that the assignee exercised a sound discretion in selling the 7.9 acres as a whole. But an examination of these cases demonstrates the fallacy of that contention. In those cases the conclusion of the court was based on the failure of the evidence in them to show that the property would probably have brought a higher price if offered in lots than if offered as an entirety, whereas in this case the conclusion is inevitable that the property would in all reasonable probability if properly advertised have sold for a much higher price if it had been offered in lots of reasonable dimensions.

The third ground on which the appellees attacked the sale was inadequacy of price. That the price was grossly inadequate is apparent from all the testimony in the case, including that of two of the purchasers, and affords some measure of the injury done to the mortgagors by the manner in which the property was sold. It is true that mere inadequacy of price is not sufficient to justify the court in setting aside a sale, unless it be so gross as to itself afford evidence of negligence or bad faith, yet it may be considered by the court in estimating the effect of any error, default or dereliction of an assignee or trustee in selling property.

It is not necessary for us to decide in this case whether any one of these considerations standing alone would have been sufficient to justify the court in setting aside the sale, because here the conclusion that the sales should be set aside rests upon all of them. The inadequate price was to some extent a consequence of the manner in which the property was advertised and sold, and afforded some evidence of the

Opinion of the Court.

effect of the course pursued by the assignee in selling it. Had the price been reasonably fair and adequate, it would have indicated that the manner in which the property had been advertised and sold had not injured the appellees. And, on the other hand, if the property had been properly advertised and sold, the fact that the price was inadequate would not in itself have been a sufficient reason to set aside the sale. But since in this case the three facts, that the property was not properly advertised, that it was not properly offered, and that it sold for an inadequate price, concur, we fully agree with the conclusion reached by the lower court that the sales should be set aside.

It is suggested in the appellees' brief that this appeal should be dismissed because on October 29th, one month before the order for an appeal in this case was filed, the assignee entered the mortgage foreclosure proceeding "dismissed and settled"; that on October 25th one Bertram K. Lazarus loaned $9,500 on the property, and that the mortgage to T. Davis Richards and S. Ella Richards was paid and released, and that the assignee, after having received the full amount due on the Richards mortgage and after having "lulled into security" Mr. Lazarus, who loaned the money which he so received, signed as attorney for the purchasers the appeal in this case. It is sufficient to say in connection with that contention, first, that the record fails to disclose the facts upon which it is based, and, second, that the assignee could not, without their consent, affect the rights of the purchasers by dismissing the foreclosure proceedings.

For the reasons stated it follows that the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*