(Decided January 5th, 1897).

---

. MARY R. HUGHES *vs.* MARY T. RIGGS.

*Mortgage Sales—Selling Two or More Lots Together—Exceptions—*
*Inadequacy of Price—Subsequent Incumbrances—Parties.*

A mortgage covered two adjoining leasehold lots fronting on a cer
tain street and a small lot in fee-simple in the rear. The leasehold
lots were each improved by houses, which had been rented together,
connecting doors having been cut between them. The back build-
ing of one of the houses covered a part of the fee-simple lot in the
rear. *Held,* upon exceptions to the ratification of a foreclosure
sale, that the trustee had exercised a sound discretion in selling the
property together and not in separate parcels.

A mortgage sale will not be set aside upon the ground of inadequacy
of price unless it be so gross and inordinate as to indicate miscon-
duct or want of judgment on the part of the trustee.

When mortgaged premises are sold under the *ex parte* proceedings
authorized by Code P. L. L., Art. 4, secs. 694–704, the fact that a
subsequent incumbrancer is not a party is no objection to the decree,
but after the claim of the mortgagee is paid any surplus of the pro-
ceeds of sale may be applied to the discharge of subsequent incum-
brances.

Appeal from an order of the Circuit Court of Baltimore City (Dennis, J.) overruling exceptions to a mortgage sale and finally ratifying the same.

The cause was argued before McSherry, C. J., Bryan, Fowler, Roberts and Boyd, JJ.

*Thomas Mackenzie* (with whom was *John V. L. Findlay* on the brief), for the appellant.

*Thomas B. Mackall* and *Alfred R. Riggs* (with whom was *Lawrason Riggs* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court:

This is an appeal from an order of a Court of Equity ratifying a sale made under its decree.

Mrs. Mary T. Riggs was the holder of a mortgage on certain real and leasehold estate in the city of Baltimore which belonged to Mrs. Mary R. Hughes. The property was sold by a trustee to the mortgagee for seven thousand two hundred and fifty dollars, and exceptions were filed to the ratification of the sale. It was alleged that the property, which consisted of three different lots, should have been advertised and sold in separate parcels; secondly, that it was sold for an inadequate price; thirdly, that one H. Edgar Johnson held the legal title to the property under certain powers of attorney made for the purpose of securing him certain advances, and that a bill in equity had been filed against him by the mortgagor, praying that said powers of attorney might be annulled and a trustee appointed to take charge of the property; and fourthly, that H. Edgar Johnson ought to have been made a party to the proceedings.

The property was advertised in the usual way according to the terms of the decree, and was described in such manner as fully and clearly to identify it. It consisted of two leasehold lots on the north side of West Franklin street, known respectively as No. 218 and No. 220, and of a small lot in fee-simple in the rear of No. 218 and fronting twenty feet on Tyson street. The leasehold lots fronted about eighteen feet on Franklin street and had a depth of about forty-five feet. The back building of No. 218 covered a portion of the fee-simple lot on Tyson street. Nos. 218 and 220 were each improved by a four-story building,

and had been rented together, and connecting doors had been cut between them; it is probable from the evidence that these doors were afterwards closed. There is a small yard in the rear of No. 220 about eight feet by fifteen. It was the duty of the trustee to exercise a sound judgment and discretion in determining whether the lots should be sold separately or together. The testimony on this point is conflicting. One witness testified that he wished to purchase one house, but that he would not bid on both. Another person present, after examining the premises with the auctioneer, coincided in opinion with him that they ought to be offered as an entirety, and he became afterwards the highest bidder except the purchaser. Two witnesses testify that the property ought to have been offered in separate parcels, and three testify that it was more judicious to sell it all together. It may easily be seen that No. 218 could not be sold separately from the fee-simple lot in the rear without considerable disadvantage; inasmuch as its back building covers a portion of this rear lot and has its only outlet to the street through it. If No. 220 should be separated from the rest of the property the only communication to its back yard would be through the main building. Its only drainage is through No. 218 to the well in its back yard. Without dwelling on this matter, it is sufficient to say that we see no sufficient reason for thinking that the discretion of the trustee was not properly exercised.

As to the inadequacy of the price we see a considerable difference in the opinions of the witnesses as to the value of the property. Two witnesses who are real estate brokers put the value of the property at between ten and eleven thousand dollars. One of them testified that for three or four years he had the property in his hands for sale, and that an offer of ten thousand dollars for the entire property was "*intimated, but not actually made,*" and that he had no other offer for it. A witness for the mortgagee puts the value at seventy-five hundred dollars. In no view of the evidence can we see such inadequacy of price as would furn-

ish any presumption against the sale ; it will not avail unless
so gross and inordinate as to indicate misconduct or want of
judgment on the part of the trustee. The practice in this
particular is too fully settled to require any discussion of
the question.

With respect to the third and fourth exceptions, it might
be sufficient to say that there is nothing in the record to
show any title in H. Edgar Johnson. We infer from what
was said in argument by counsel that whatever rights he
possesses were acquired subsequently to the execution of
the mortgage. But it will do no harm to consider the ob-
jections. The mortgage in this case contained an assent on
the part of the mortgagors to the passage of a decree in ac-
cordance with the local law of Baltimore City relating to
mortgages ; now embodied in Article 4 (Public Local Laws),
sections 694 and 704 inclusive. According to section 692
the decree is required to be passed on an *ex parte* petition
by the mortgagee or his assignee ; and so, of course, there
can be no party defendant in the proceeding. But when
the sale has been made, it is held that " the propriety of the
decree as well as the validity of the sale thereunder may be
inquired into and contested, after the passage of the order
of ratification *nisi*, and before the final order of confirmation
has been passed." *Seebold* v. *Lockner*, 30 Maryland, 138.
Manifestly, a subsequent lien could be no ground of objec-
tion to the decree, because by the 694th section the sale is
as effectual as if it had been made under a decree " between
the proper parties in relation to the mortgage, and in the
usual course of the Court." The necessary result must be
that after the claim of the mortgagee has been paid, any
surplus of the proceeds of sale which may remain will be
applied to the discharge of subsequent incumbrances. And
so it has been decided in *Hardy* v. *Smith*, 41 Maryland, 1.

The order of the Court below must be affirmed with costs.

*Affirmed with costs.*

(Decided January 5th, 1897).