HOWARD C. BREGEL ET AL. *v.* JOHN BECKMAN.

[No. 31, April Term, 1929.]

*Decided May 24th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Lyde Mason, Jr.,* for the appellants.

*H. Courtenay Jenifer* and *Thomas M. Jenifer,* submitting on brief, for the appellee.

Bond, C. J., delivered the opinion of the Court.

A mortgagor of real property, appellee in this court, has excepted to a foreclosure sale of the property because of inadequacy in the advertisement of it, and consequent inadequacy of price realized, and because of failure to bring into the proceedings a mortgagee under a prior mortgage, or to advertise the existence of the prior mortgage. Other grounds of exception were specified in the lower court, but only these are pressed and need be considered. The trial court sustained the exceptions and set aside the sale, and the assignee of the mortgage and the purchaser have appealed to this court.

The advertisement published in a newspaper described the property as "valuable improved property, situate on Putty Hill Avenue, near Harford Road, in the 14th Election District of Baltimore County," to be sold under a power contained in a mortgage from John Beckman, the appellee, and his wife; the description by metes and bounds was given, and it was stated that "the improvements consist of a modern cottage." There was a small wooden outbuilding, an open part of which was used to house an automobile, and that building was not mentioned. The auctioneer took a sign advertising the sale to be posted on the house, sixteen days before the sale, but the mortgagor requested him to forbear posting it because he, the mortgagor, hoped to make arrangements to pay the debt and avoid sale, and meanwhile would avoid having the foreclosure known, and the sign was left with the mortgagor and never posted. The assignee of the mortgage personally solicited over the telephone neighbors and others who, he thought, might consider bidding. On the day of sale, the auctioneer cried the property and rang his bell in the usual manner, and omitted no care in that respect. The mortgagor himself, being interested to forestall a sale,

of course did nothing to aid in it, and, although he still lived in the house on the property, he was not present at the time of sale. And no objection was then made on his behalf.

Only three or four bidders attended, and the price brought was $3,510, in fee. The purchaser within a few days, and during the time allowed for filing exceptions to the sale, took steps to have the necessary repairs made, and in addition to making these had a room floored, finished and equipped as a bathroom, spending about $400 in that work, all with the knowledge and to a large extent in the presence of the exceptant, but without any suggestions of objections by him to the sale. And before the expiration of the time for filing exceptions the exceptant removed from the property. He filed his exceptions on the last day of the time permitted.

The first mortgage on the property was for $1,700, and the second, being foreclosed, was for $900. Upon the hearing of the exceptions witnesses valued the property at from $4,500 to $7,500. They had all examined it and formed their estimates after the house had been repaired and the bathroom installed by the purchaser. And one witness appears to have made only a hasty inspection before forming his estimate, while all testify mainly to values at ordinary sale, rather than at forced sale. There was testimony that it was difficult to sell such property at all at that time, and especially difficult to obtain a high price at a forced sale. As one witness for the exceptant stated, it was no time to sell at a forced sale. On the whole evidence, the price appears to be below the value that might reasonably have been hoped for, even from a forced sale. But that there was any great loss of forced sale value, it seems impossible to say, in view of the difficulty of selling such property at all. And on this issue, it seems to us there is significance in the fact that the mortgagor did not at first complain of the price, but, on the contrary, acquiesced in the purchaser's entering and making the improvements, and left.

The newspaper advertisement, taken by itself, seems to this court to be less definite in its description of the property

474

than it should be. It fails to name the occupant, except as he happened to be the mortgagor named in the reference to the mortgage, fails to give any identifying description of the improvements, or any means of identification of the exact site on Putty Hill Avenue near Harford Road other than surveyors' measurements from lines to be found only in a deed in the land records. The houses there were not numbered. *Kauffman v. Walker,* 9 Md. 229; *Stevens v. Bond,* 44 Md. 506; *Evans Marble Co. v. Abrams,* 131 Md. 204, 208. There is no evidence that this lack of further identification actually prevented any one from finding the property. The only witness who testified on the effect and sufficiency of the newspaper advertisement said he asked, at a corner store, which was the Beckman property, and had no difficulty in finding it. And, as that testimony illustrates, the supplementing of the newspaper advertisement with information at the site may be an important part of the advertising of a sale. The testimony offered of possible bidders who failed to attend was to the effect that the absence of a sign on the property or the lack of handbills prevented their attendance. And that fact gives rise to a serious question as to the effect of the exceptant's action in keeping the sign off and concealing the fact that a sale was to be held, in other words, acting to bring about the very lack of knowledge of which he now complains. In the case of *Johnson v. Dorsey,* 7 Gill, 269, there seemed to have been a clear loss of high bidders at a sale from an impression in the community that the sale was not to take place as advertised. The court was disposed to infer that the impression had been generated by the debtor himself, in efforts to raise money and pay the debt to forestall a sale, and added, page 289: "At all events, it is difficult to believe under the circumstances of the case, that this impression in the community to which Mr. Stewart refers, was not known to the exceptant. If so, it was his plain and imperative duty to have communicated its existence to the trustees, that they might have guarded the sale against its influence, and an act of such remissness and negligence on the

part of the debtor, would be regarded, irrespective of other considerations, as presenting an insuperable obstacle to the interposition of a court of equity." And citing that case, this court said, in *Evans Marble Co. v. Abrams*, 131 Md. 204, 206, that "Sales will not be set aside for causes that the parties in interest might with a reasonable degree of diligence have obviated." For all that appears here, the newspaper notice, if it had been supplemented by a sign on the property, might have served its purpose fully, and left no reason for objection; the omission of the sign alone may well have been the cause of any failure of attendance. And when we find this omission due to the present exceptant himself, find no creditors of his interposing with objections, no objection made by the exceptant to holding the sale, and none at or after the sale, but on the contrary an acquiescence in the purchaser's entering and improving the property, and a removal from the property for the purchaser—all until the last day allowed for filing exceptions—when we find these facts, we conclude that the court would not be justified in setting aside the sale for the exceptant and depriving the purchaser of his bargain, in the absence, at least, of some shocking loss of price at the sale. And we do not find the price so low, in view of the fact that the sale was held at a time when it was extremely difficult to realize the value of such a property at a forced sale.

The objection that a prior mortgagee was not made a party to this proceeding, and that the existence of the prior mortgage was not mentioned in the advertisement, we find untenable, because the prior mortgagee was present at the sale and consented, in consideration of the payment to him of overdue security notes of $200, that the property should be sold free of his mortgage, and that his mortgage should be paid off out of the proceeds. Upon this consent it was announced that the property was to be sold free of incumbrances, and it was so sold. And the assignee of the second mortgage, in pursuance of the agreement, paid the amount of the two overdue notes secured by the prior mortgage. Such

an assent by the prior mortgagee was sufficient to support the sale free of his mortgage. *Tobin v. Rogers,* 121 Md. 249, 252. Besides, there is no objection now on the part of the prior mortgagee or the purchaser, and no evidence that any misunderstanding as to the prior mortgage affected the price realized.

> *Decree reversed, and cause remanded for proceedings in accordance with this opinion, with costs to the appellants.*