## MARTIN *v.* GOLDEN KEY HOMES, INC.

[No. 481, September Term, 1965.]

*Decided November 11, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and FINAN, JJ.

*Ralph G. Hoffman,* with whom were *Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for the appellant.

*Walter C. Mylander, Jr.,* with whom were *Stanford Hoff, James D. Nolan* and *Mylander & Atwater* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

This was a proceeding for the foreclosure of the mechanics' lien of Golden Key Homes, Inc., which had filed its lien in the amount of $10,469, with interest, against a one-story funeral home known as 324 Main Street, Hampstead, Carroll County, Maryland. A bill to foreclose the mechanics' lien was timely filed in the Circuit Court for Carroll County against David R. Martin, the owner of the property. A decree pro confesso was taken April 29, 1963. No other parties were then named as defendants, although there was a first mortgage of record, senior to all other lien claims, to Baltimore Federal Savings & Loan Association, originally, in the amount of $28,800. This was conceded to be a first lien. Also there were holders of mechanics' liens of record who were not joined as required by Maryland Rule BG 71 c1. A decree, in usual form, was entered on May 31, 1963, appointing Golden Key's counsel, Herbert S. Garten, trustee, and authorizing him to make the sale. Baltimore Federal, the first mortgagee, was contacted by the trustee prior to sale and gave its oral consent that the property be sold free and clear of the first mortgage, and that, upon payment to it of the amount of its claim which it furnished in writing to the trustee, it would execute a release of the first mortgage. The first mortgage was then in default. However, Baltimore Federal was not joined as a party to the foreclosure proceedings, nor did the bill recite that its consent had been obtained to sell free and clear of its mortgage. The trustee filed his bond and advertised the property for sale, in fee simple, making no mention of a first mortgage. It was the local practice to indicate in the advertisements that the property was being sold subject to a mortgage, if that were the case. Advertisements were run in three area newspapers. The sale was duly cried on the premises on the advertised date and time.

The sale was held in the large service room of the funeral establishment. It was well attended by some thirty to forty people, and the trustee, prior to the bidding, made an announce-

ment within the hearing of all potential bidders, including appellant's attorney, that the property would be sold "lock, stock and barrel, free of encumbrances." The bidding was described as active. The property was knocked down to Golden Key, the successful bidder, for $33,000. A "Contract of Sale" was signed by the trustee and the vendee, reciting that the sale was "in fee simple," and that upon ratification a deed would be executed "which shall convey the property by a good and merchantable title to the vendee." The trustee reported the sale in fee simple, on July 30, 1963, filing with it a copy of the contract of sale. After the publication of the order nisi, passed August 1, 1963, and no exceptions having been filed, the sale was finally ratified and confirmed on September 12, 1963. Settlement was had on September 25, 1963, and on that date the trustee, upon receipt of the full purchase price, paid the balance of the first mortgage, $21,184.64, to Baltimore Federal. The trustee obtained and recorded a release of the mortgage, and executed a deed conveying fee simple absolute title to Hampstead Realty, Inc., the assignee of Golden Key Homes, Inc. Hampstead Realty was a closely held corporation owned by the same parties who owned Golden Key. The deed mentioned no prior liens. On July 12, 1963, the trustee advised all of the mechanics' lien claimants to file their claims, which each did. The auditor filed his account on September 6, 1964, in which he disallowed the trustee's disbursement of $21,184.64 to Baltimore Federal to discharge the first mortgage lien. He allowed three mechanics' lien claims in full and allowed the claim of a subsequent judgment creditor, whose judgment was junior to all mechanics' lien claims. The allowance of those claims totaled $16,441.23. Thus, out of a total of $31,544.31 (amount received from sale plus interest less sale expenses, etc.), the balance for distribution was $15,103.08. The auditor allowed the balance of $15,103.08 to the defaulting David R. Martin. Exceptions were filed to this auditor's account by the trustee, who asked that the proceedings be reopened and that the matter be remanded to the auditor for the statement of a new account. The court (Judge James E. Boylan, Jr.) filed a preliminary opinion on January 21, 1964, and on the same day passed an order setting the exceptions down for formal hearing.

The trustee filed supplemental exceptions to the auditor's account, and in his petition to join additional parties, he prayed that Baltimore Federal, the first mortgagee, and Reisterstown Lumber Company, which had not yet filed its mechanics' lien claim and petition to intervene, be impleaded. All of the original parties to the proceeding and those who had intervened were served with the petition. David Martin, the appellant, and Baltimore Federal were among those who answered the petition.

A hearing was held on July 9, 1965, by Judge Edward O. Weant, Jr. in the Circuit Court for Carroll County. At the hearing on the exceptions, the auctioneer testified that in his opinion $33,000 was a fair price for the property. Also a local real estate expert testified that the full and fair market value between a willing seller and buyer was $34,000. After hearing the testimony, the chancellor filed his opinion and decree sustaining the exceptions to the auditor's account and directing the auditor to allow the expenditure made by the trustee for the payment of the balance due on the first mortgage. From this decree, this appeal has been taken by the original owner and mortgagor, Martin. No appeal has been taken by any of the lien claimants whose claims were subject to the first mortgagee's claim.

For the reasons as set out below the decree of the chancellor must be affirmed.

1. The trustee had sufficient interest in the proceeds to except to the auditor's account.

2. Under the circumstances of this case, a prior lien claimant, who consented to a sale by a subsequent lien claimant free and clear of the prior lien, may properly be paid out of the proceeds of sale when the sale was made free of liens, and the price received for the property at the sale was not grossly inadequate.

3. Appellant is estopped from raising the issue of the validity of the sale because of the failure to except to the ratification of the sale.

As to the first reason, this Court held in *MacNabb v. Sheridan,* 181 Md. 245, 247, 29 A. 2d 271, that "[t]o have the right either to except to an auditor's account or to appeal he [the

trustee] must have some interest in the fund or have the power under the instrument appointing him." Otherwise the right of a fiduciary to appeal had to be in the manner and under the conditions prescribed by a statute, which has since been repealed and superseded by Code (1957), Article 5, Section 8. In that case, MacNabb was a trustee appointed by the court to sell real estate owned by a deceased person. An exception was taken by Sheridan to the auditor's report which had excluded her from participating in the distribution of the property of the deceased. From the order sustaining the exceptions, the trustee appealed. The Court found that the trustee had no interest in the division of the money and that since the statutory prerequisites were not met, he could not appeal.

In the case at hand, the trustee mistakenly [1] paid out part of the funds that he received to obtain the release of the first mortgage so that settlement could be made with the purchaser. This expenditure was rejected by the auditor, presumably, because the first mortgagee had not been made a party to the foreclosure proceedings. The trustee, having made such payment, had an interest in the question of whether such payment should be allowed to him in the auditor's account. Therefore, we hold that the trustee, who had paid the claim of the first mortgagee and obtained a release thereof and whose payment was disallowed by the auditor, had an interest which permitted him to except to the auditor's account.

As to the second reason, this Court held in *Tobin v. Rogers,* 121 Md. 249, 252, 88 Atl. 133:

> "The first mortgagee not having been made a party, any sale under the second mortgage must necessarily have been subject to the operation of the first mort-

---

1. The trustee appointed by the court to sell property had the duty to bring the proceeds into court for disposition. *Poe v. Snowden,* 70 Md. 383, 17 Atl. 377. In this case, Herbert S. Garten, trustee, misconstrued Art. 63, § 25, Code (1957), and prematurely paid out of the proceeds of sale for the release of the prior mortgage. If the trustee pays away the proceeds of sale before ratification of the auditor's account he does so at his own risk. *Dent v. Maddox,* 4 Md. 522, 527. See also Miller, *Equity Procedure,* § 515, Duty of trustee in respect to proceeds. (1897).

gage, *unless* the first mortgagee assented to a sale free and clear of his mortgage *or* voluntarily released his mortgage, *or* intervened in this proceeding, subjecting himself and his mortgage to the jurisdiction of the Court. This it was perfectly competent for him to do * * *." (Emphasis added.)

Without the consent of the first mortgagee, or unless he is made a party to the proceedings, the court lacks jurisdiction to derogate from the prior grant. *Balto. Fed. S. & L. Ass'n v. Eareckson,* 221 Md. 527, 158 A. 2d 121. In other words, the first mortgagee can not be forced to allow a sale of the property free of his lien, but when he voluntarily consents to such sale, or voluntarily releases his mortgage, or submits to the jurisdiction of the court, the property may be sold free of his lien. *Bregel v. Beckman,* 157 Md. 471, 475-76, 146 Atl. 231. In *Bregel,* with the consent of the first mortgagee, it was announced that the property was to be sold free of encumbrances, and it was so sold. Pursuant to an agreement, the amount secured by the prior mortgage was paid. "Such an assent by the prior mortgagee was sufficient to support the sale free of his mortgage."

In the present case, the first mortgagee consented to the sale free of its lien prior to the time of the sale. It was announced at the sale that the property was to be sold free and clear of all encumbrances. The trustee paid the amount due to the first mortgagee who, in turn, delivered a release which was duly recorded. The first mortgagee was joined in the hearings on the exceptions to the auditor's account as a party, thus it was subject to the jurisdiction of the court. Contrast these facts with that which occurred in *Tobin v. Rogers, supra.* There the mortgagee only filed a claim for the amount of the mortgage and the interest thereon without asking to become or being made a party to the proceedings for sale brought by the second mortgagee, so as to be bound thereby. Also there was no clear evidence to support an allegation that the first mortgagee released his mortgage. The Court said in remanding the case (121 Md. at 252) :

"Before ratifying the account making this allowance to the trustee there should *either* have been satisfactory

proof of the payment and release of the first mortgage, or R. Dorsey Rogers, trustee and mortgagee should by apt proceedings have been made a party to the cause in such a manner as to bind him, and give the Court jurisdiction in this proceeding over the first mortgage." (Emphasis added.)

An issue closely connected to the above is whether the failure of the trustee to mention in the advertisement of sale the existence of a prior lien prejudiced the sale of the property. It was shown at the hearing on the exceptions that the trustee had the consent of the prior lienor to sell the property free and clear; that the advertisement stated that the property was to be sold in fee simple, but did not mention the existence of the first mortgage; that it was publicly announced at the sale that the property was being sold free and clear of any encumbrances; and that the sale was well attended and the bidding was lively. Further, there was testimony by the auctioneer and by a real estate expert which indicated that the price received for the property was a fair price.

At the hearing below, it was alleged by the appellant and by the junior lienholders that the property "may very well have brought" more had the first mortgagee been made a party. The contention was based on the theory that a prospective purchaser may have seen the mortgage of record and may have been deterred from attending the sale. The subsequent lien claimants, the payment of whose claims have been reduced by the decree below, have not appealed. Appellant raised the question in his brief, but made no argument nor cited any authorities. There was no proof below that the property was worth any more than that which was bid at the sale. In light of the evidence as set out above and of the absence of proof to the contrary, we hold that this contention is without merit. *Righter v. Clayton,* 173 Md. 138, 194 Atl. 819. Although the prior mortgagee was not joined in the original proceedings, its consent was given to the sale of the property free and clear, and since there was no showing that the price received for the property as sold was inadequate, we hold that the release of the prior mortgage may be paid for out of the proceeds of sale. Cf. *Bregel v. Beckman, supra.*

In failing to raise the issue of the validity of the sale when the order nisi was passed on the report of sale before the final ratification, the appellant is estopped from raising it at the hearing on the exceptions. Cf. *Title Co. v. Burdette,* 104 Md. 666, 65 Atl. 341. In that case, after the filing of a bill for the sale of land to enforce a mechanics' lien claim and decree for sale, the title company, which had a prior mortgage on the property, petitioned to have its counsel appointed a co-trustee for the sale. This was done, and the trustee cooperated with the mechanics' lien claimant in enforcing the decree for sale, based on the latter's claim. On exceptions to the ratification of the auditor's second account, the title company contended that Burdette's claim (assigned to him by the lien claimant) was invalid. Burdette argued that the validity and amount of the claim were conclusively established by the decree of sale. Without deciding to what extent the decree in this case was an adjudication of the validity and amount of the claim, the Court held that the title company was estopped. The title company had failed to attack the claim at any stage of the proceedings until its exceptions were filed.

David R. Martin was the original defendant named in this proceeding now before us. He was represented by his attorney at the sale when the announcement was made that the property was being sold free and clear of liens and encumbrances. The attorney heard the announcement and permitted the trustee, without objection, to conclude the sale. Appellant had notice of the order nisi which required a showing of cause why the sale should not be ratified as reported by the trustee. He made no effort to show cause and did not object to ratification, although he had knowledge that the vendee had purchased after the announcement that the sale was free of liens. Appellant made no objection to the ratification of the sale and made his first objection to reopening the auditor's account under which he would have received $15,103.08.

Moreover, as Judge Weant in his opinion below pointed out: "Simple arithmetic would indicate that the mortgagor would be entitled to receive nothing, if all of the lien holders were given consideration according to their seniority. Certainly he cannot be said to be hurt by the

omission of the first mortgagee as party to the proceedings. He is, therefore, in favor of the omission because he profits thereby.

\* \* \*

"While a rigid interpretation of the law in this case would give substantial sums of money to lien holders who would not otherwise be entitled to same under other circumstances, it would, at the same time, inflict a large monetary loss on the Trustee even though there is nothing in the record to indicate fraud or misconduct on the part of said Trustee. 'It is a well established principle that courts of equity will not permit the forms of law to be made the instruments of injustice, but will interpose against parties attempting to avail themselves to the rigid rules of law for unfair purposes.' *Hyatt v. Romero,* 190 Md. 500 at 505."

We affirm the decree of the court below directing that the auditor should state a new account allowing credit to the trustee for the payment to Baltimore Federal.

*Decree affirmed, appellant to pay the costs.*